**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------

SHIVA STEIN,                                          :
                                                      :
        Plaintiff,                          :   Civil Action No. _____
                                                      :
v.                                                    :
                                                      :   **COMPLAINT FOR VIOLATIONS OF**
STEIN MART, INC., JAY STEIN, D. HUNT                  :   **SECTIONS 14(a) AND 20(a) OF THE**
HAWKINS, MARYANN MORIN, IRWIN                         :   **SECURITIES EXCHANGE ACT OF**
COHEN, THOMAS L. COLE, TIMOTHY                        :   **1934**
COST, LISA GALANTI, RICHARD L.                        :
SISISKY, and BURTON M. TANSKY,                        :   **JURY TRIAL DEMANDED**
                                                      :
        Defendants.                        :
--------------------------------------------------------   :

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.      This is an action brought by Plaintiff against Stein Mart, Inc. ("Stein Mart or the "Company") and the members Stein Mart board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Stein Mart by affiliates of Kingswood Capital Management, L.P. ("Kingswood").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on March 2, 2020 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Proxy

Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Stratosphere Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Stratosphere Holdco, LLC (an affiliate of the Kingswood), will merge with and into Stein Mart with Stein Mart surviving the merger and becoming a wholly owned subsidiary of Stratosphere Holdco, LLC (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Stein Mart common share issued and outstanding will be converted into the right to receive $0.90 in cash (the "Merger Consideration").

3.      The Board formed a special committee comprised of purportedly independent and disinterested directors, consisting of Richard Sisisky (Chairman), Irwin Cohen, Thomas Cole and Timothy Cost (the "Special Committee") to consider and negotiate the terms and conditions of the Proposed Transaction.

4.      As discussed below, Defendants have asked Stein Mart stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisor of the Special Committee, PJ Solomon Securities, LLC ("PJ Solomon") in support of its fairness opinion, and relied upon by the Special Committee and the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

5.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

6.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Stein Mart stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

### JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

8.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman,* 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

9.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Cincinnati's common stock trades on the New York Stock Exchange, which is headquartered in this District. *See, e.g., United States v. Svoboda,* 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases). Moreover, PJ Solomon, the Special

Committee's financial advisor, maintains its headquarters in this District. Kingsdale Advisors, the Company's proxy solicitation agent in connection with the Proposed Transaction, is located in this District at 745 Fifth Avenue, New York, New York 100151.

## PARTIES

10.     Plaintiff is, and has been at all relevant times, the owner of Stein Mart common stock and has held such stock since prior to the wrongs complained of herein.

11.     Defendant Stein Mart is a Florida corporation and a party to the Merger Agreement. Stein Mart common stock is traded on the NASDAQ Stock Exchange under the ticker symbol "SMRT."

12.     Defendant Jay Stein has been a member of the Board since 1968 and is the Chairman of the Board of the Company. Mr. Stein is the largest Stein Mart shareholder.

13.     Defendant D. Hunt Hawkins is the Chief Executive Officer and has been a member of the Board since 2016.

14.     Defendant MaryAnn Morin is the President and has been a member of the Board since 2018.

15.     Defendant Irwin Cohen has been a member of the Board since 2007 and is a member of the Special Committee.

16.     Defendant Thomas L. Cole has been a member of the Board since 2016 and a member of the Special Committee.

17.     Defendant Timothy Cost has been a member of the Board since 2016 and a member of the Special Committee.

18.     Defendant Lisa Galanti has been a member of the Board since 2016.

19.     Defendant Richard L. Sisisky has been a member of the Board since 2003 and is the  Chairman of the Special Committee.

20.     Defendant Burton M. Tansky has been a member of the Board since 2014.

21.     The defendants identified in paragraphs 12-20 are collectively referred to as the "Individual Defendants" or the "Board."

22.     The defendants identified in paragraphs 11-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     The Proposed Transaction

23.     Stein Mart, a specialty off-price retailer, offers designer and name-brand fashion apparels, home décor merchandise, accessories, and shoes at everyday discount prices in the United States. The company's stores also provide merchandise locator services; a preferred customer program; co-branded and private label credit card programs; and electronic gift cards. As of November 18, 2019, it operated 283 stores in 30 states. The company also sells its products through an e-commerce retail selling site. Stein Mart, Inc. was founded in 1908 and is headquartered in Jacksonville, Florida.

24.     On January 31, 2020, Stein Mart announced the Proposed Transaction:

> JACKSONVILLE, Fla., Jan. 31, 2020 (GLOBE NEWSWIRE) -- Stein Mart, Inc. (NASDAQ: SMRT) ("Stein Mart" or the "Company") today announced it has entered into a definitive merger agreement under which an affiliate of Kingswood Capital Management, L.P. ("Kingswood") will acquire all of the outstanding common stock of Stein Mart not already beneficially owned by affiliates of Jay Stein, Stein Mart's former CEO and current Chairman of the Board of Directors, and related investors for $0.90 per share in cash. Upon closing, Stein Mart will become a privately held company and Stein Mart common stock will no longer be listed or traded on any public stock market.

> The purchase price represents a premium of approximately 38% to Stein Mart's closing stock price on January 30, 2020, the last trading day prior to this announcement.

The transaction was unanimously approved by the Stein Mart Board of Directors (other than Mr. Stein), acting on the unanimous recommendation of a Special Committee of independent directors that was granted full authority to conduct a comprehensive strategic review and evaluate, and if warranted, negotiate an acquisition proposal.

"The Special Committee and its advisors conducted a thorough and independent process to review the Company's strategic alternatives and identify a transaction that would maximize shareholder value. We believe that this transaction is in the best interest of all Stein Mart stakeholders, including our many loyal employees," said Richard L. Sisisky, Stein Mart Board member and Chairman of the Special Committee.

The transaction will be financed by debt provided by Wells Fargo Bank, National Association and Pathlight Capital LP and by equity provided by affiliates of Kingswood.  As part of the transaction, an entity managed by Jay Stein will contribute its equity and, following the closing of the merger, will indirectly own one-third of Stein Mart after the closing.

The transaction, which is expected to close in the first half of calendar year 2020, is subject to approval by Stein Mart shareholders and the satisfaction of other customary closing conditions. The Stein Mart Board of Directors recommends that Stein Mart's shareholders vote to adopt and approve the merger agreement.

Stein Mart will file a Current Report on Form 8-K with the Securities and Exchange Commission (SEC), which will more fully describe the terms and conditions of the merger agreement and the proposed transaction.

**Advisors**

PJ SOLOMON is serving as financial advisor to the Special Committee, Foley & Lardner LLP is serving as the Special Committee's legal counsel, and Kingsdale Advisors is serving as the Company's proxy solicitor. Goodwin Procter LLP is serving as legal counsel to Kingswood and Latham & Watkins LLP is serving as legal advisor to Jay Stein.

\* \* \*

25.     The Board is recommending to the Company's shareholders to vote in favor of the Proposed Transaction. It is therefore imperative that Stein Mart's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.      The Materially Incomplete and Misleading Proxy Statement**

26.     On March 2, 2020, Stein Mart filed the Proxy Statement with the SEC in connection with the Proposed Transaction.   The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Stein Mart Financial Projections*

27.     The Proxy Statement fails to provide material information concerning financial projections by Stein Mart management and relied upon the financial advisors in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Stein Mart management provided to

the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

28.    For the May 2019 Management Projections, August 2019 Management Projections, and the January 2020 Management Projections (10+2 and 11+1), the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 201 through 202: Adjusted EBITDA, cash flows from operating activities, and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

29.    When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30.    The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should

accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

31.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

32.     With respect to PJ Solomon's *Selected Publicly Traded Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by PJ Solmon in the analysis.

33.     With respect to PJ Solomon's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed by PJ Solomon in the analysis.

34.     With respect to PJ Solomon's *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the line items used to arrive at the estimated unlevered free cash flows; (ii) the inputs and assumptions underlying the range of discount rates ranging from 9.5% to 11.5%, (iii) the inputs and assumptions underlying the selection of the range of exit terminal year adjusted EBITDA multiples from 3.5x to 6.0x; (iv) the inputs and assumptions

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

underlying the application of perpetuity growth rates ranging from 0.0% to 2.0%; (v) range of illustrative terminal values of the Company; (vi) Company's adjusted net debt; and (vii) the number of fully diluted shares of Company Common Stock as of January 27, 2020.

35.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

36.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial

analyses that were prepared the financial advisors and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

39.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

40.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

41.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff

be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     The Individual Defendants acted as controlling persons of Stein Mart within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Stein Mart, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Stein Mart, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Stein Mart, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at

issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

46.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: March 10, 2020

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By:   */s/ Gloria Kui Melwani*
      Gloria Kui Melwani
      270 Madison Avenue
      New York, NY 10016
      Telephone: (212) 545-4600
      Facsimile: (212) 686-0114
      Email: melwani@whafh.com

      *Attorneys for Plaintiff*